Good morning, everyone. Welcome to the Ninth Circuit. We have Judge Granado with the Eastern District of Texas sitting with us for a second day in a row, so we thank him for his service. I'm going to get started in just one moment, counsel, but let me put on the record the number of cases that have already been submitted on the briefs and record, and then we'll get to the one Perez v. Bondi, Cerda-Castillo and Postome-Cerda v. Bondi, Gonzalez v. Bondi, Rivera v. McHenry have all been submitted on the briefs and record. So that then leads us to U.S. v. Egwumba and Duro. I hope I'm pronouncing those names correctly. You may proceed when you're ready, counsel. Good morning, Your Honor. It's Todd Burns on behalf of Mr. Egwumba. Mr. Duro's counsel and I have agreed to split our time ten minutes apiece. My hope is to save two minutes for rebuttal. All right. I'll try to help you out. I want to begin with the identity theft conviction against Mr. Egwumba, and the government proceeded on a possession theory, not a use theory, against Mr. Egwumba, and as a reminder, the facts involve Mr. Egwumba received a text with the Chase account number in it, which the government alleged is the means of identification. There's no indication that he kept or possessed that text beyond receiving it. There's certainly no indication he ever used it or did anything with it. That's why the government proceeded with the possession theory. Under those facts, under Duro and this court's opinion of Sepien, it's impossible to say that the possession for maybe a split second, maybe longer, of that account number was the key mover or at the crux of the criminality. How long was the possession of it? They don't have any evidence with respect to that. What we know is that a few days later, Mr. Ero provided Mr. Egwumba a different account number, and also a couple days after Mr. Egwumba received that Chase account number, he was communicating by text with Mr. Ero, and Mr. Ero said, look, these aren't serious people because they were asking to get the account information. You should leave them. So it seems a fair inference that he didn't possess it for very long, if at all, but the evidence just doesn't show anything. Why does that matter, counsel? The jury instructions, we're on plain error review? No, this is the, what I'm arguing right now is a sufficiency claim, but there is a jury instruction claim as well. So there's just no evidence to establish the crux element that was set out in Dubin and that this court has dealt with in the possession context in Ofsepian. They have to show that the possession was at the crux of the count two massive wire fraud conspiracy, and there's no evidence here to support that the possession had any effect. Right. I see an overlap in your two arguments because for me, given the nature of the scheme, I am struggling to understand why the possession of the means of identification doesn't go to the crux of the criminal conduct. Because it didn't affect the alleged wire fraud at all. That's why the government spends its entire answering brief arguing use in its 28J letter. It argues use, but that's based on other people's use, that other people used account numbers to try to lull victims into sending their information. Mr. Gwumba didn't do, there's no evidence he did anything with the account information. There's no evidence he did anything other than receive it. So it couldn't possibly be a key driver of the criminality involved in count two. The government's never even tried to make an argument as to how it would be. They just dodged it, constantly arguing generically use and maybe uses to Mr. Duru, but Mr. Gwumba is charged with possession. On the theory of possession, right? Well, it's the offense of possession. The 1028A has three offenses, use, possession, and I believe the third one is transfer. So they cite, for example, Parviz, which came out recently, that's a use case. Obsepian is directly on point, it's a possession case. In Obsepian, the government actually tried to come up with a theory as to how the possession could have somehow been a driver of the criminality. They said, well, they're hanging on to this person's identity in case they get audited later as part of Medicare, Medicaid fraud, so they've got it available. The court rejected that. The government's offered no theory here as to how Mr. Gwumba's perhaps split-second possession of the account information. It's questionable whether that's even possession based on the evidence. What kind of guidance does the Supreme Court in Dubin give us for what at the crux means? Well, they say it has to be the key mover of the criminality of the underlying offense, which here is the Mastiff wire fraud conspiracy charge. I don't think Mr. Gwumba's split-second perhaps possession of the account information could be the key mover of anything with respect to the count two wire fraud. I would like to shift gears... On the count two wire fraud, does the government rely at all on an aiding and abetting theory? Not from my client, no. I'd like to shift gears to the insufficiency on the wire fraud related to the lack of evidence on the agreement. Before you get to that, could you address the intended loss issue? Sure. Because in my mind, I'm not sure you raised the objection below. Did you? Yes. How? Well, they challenged, they said there's no loss to the victims here, and they submitted basically a forensic kind of analysis. Right, but that's just an objection similar to what they did in Hackett, where they objected to the way in which the calculation was made in terms of the numbers and whatnot. But there they said it's a plain error review. Why shouldn't it be plain error in this case? Well, in Hackett, and let me try to get to the number where I've got this... In Hackett, one of the things they specifically noted is that Hackett didn't object to the use of the attended loss provision nor advocate for loss calculations based on the actual losses to the victims. Correct. Here, Mr. Gwumba's counsel clearly advocated for calculating loss. Can you cite the record for that? I'm not sure I saw that. I don't have the record cite handy, but in a nutshell, he said there is no loss to any victim. There's no showing that anyone lost any money here. There's really no showing as to the background fraud. But there's a difference between objecting to the measure of it versus the way in which it's calculated. I mean, I guess there's a difference, I'm thinking. Well, he objected to applying that adjustment. Now, of course, it's claims that are preserved, not arguments. And I would suggest that Hackett's acknowledging that arguing that there is no loss here so that the adjustment shouldn't be applied is objecting to the adjustment. And whether or not you construe the arguments made here as different arguments... Well, don't you think that that's kind of what they did in Hackett, though, in that case? They made the same objection that, apparently, you all made below. But in that case, what the court in Hackett tells us is that's plain error review. Well, I just quoted the part of Hackett that I think suggests otherwise, but I'd just jump past that and say, look, under Supreme Court case law, it's pretty clear that if there is a plain error based on the time of appellate review, that the third and fourth prong of plain error review, when it's guidelines error rather than trial error, is pretty much given. And that's... The two Supreme Court cases are eluding me. They've been decided in the last five years. They pretty much said, look, when you're dealing with guidelines error, it's a lot easier to correct than trial error. And so pretty much we're going to find that the third and fourth prong have been met. So even if the court applies plain error review, and particularly in light of the impact of the sentence here, I think plain error review would be met. I would like to say something on the intended loss thing before I wrap up here so I don't step on my client, my co-counsel's time. There's a legal argument as to why intended loss shouldn't apply, but there's also the factual argument. And the factual argument is based on the fact that they have to show that Mr. Ogwumbo purposely sought to inflict loss, and not just that he knew that loss might be inflicted on someone. The background information as to any fraud is basically just that Mr. Ogwumbo is saying, hey, there are some unknown people who are engaged in some fraudulent activity that's undefined, maturity of which is unknown, that might want these accounts to transfer the money into. That certainly cannot establish that he himself purposely sought to inflict the loss. So the court doesn't even need to get to the legal error question. But if he knew the purpose of the bank accounts was to launder money that was stolen from people, how could that not have been his purpose? Well, see, that raises an interesting question. Is it to launder money or is it to receive the money from the fraud? They've kind of blended the two together. But he has to purposely seek to inflict the loss. So let's say, for example, we'll take the laundering approach that Your Honor took. Other people somewhere else inflict the loss. It's their purpose to inflict the loss. He has no purpose to inflict it. He doesn't actually do anything to himself to inflict it. He knows that loss is going to be inflicted, which under Manitou and under the guidelines, you know, adjusted and based on the Tenth Circuit Manitou's case is not enough. At that point, he's just arranging to receive the money. He hasn't purposely inflicted the loss on anybody. That's slicing it really thin, counsel. It's the law. It's the language in Manitou. It's what the Sentencing Commission has adjusted so we don't get into thought crimes. Oh, he intended, he hoped that loss would be inflicted on someone. Did he purposely inflict the loss? And if there are no questions, I have nothing further. Well, let me see. Don't worry about the clock for now. Let me make sure that all of my colleagues' questions get answered. Well, I'm sorry. Briefly, on the identity theft enhancement under 2B1.1, what's your position on whether we need to consider the commentary on what the meaning of victim for that is? Is this on the number of victims? Yes. Number of victims. Well, I think either way the government loses because what the guideline says victim, 10 or more victims. The guideline commentary says victim means someone who suffered monetary loss. Do we need to look at the commentary? Isn't the term victim pretty clear? I think victim is consistent with the commentary that a victim of fraud offense is someone who suffered monetary loss. The government's counterargument is, oh, victim should include an intended victim. Well, or someone whose identity has been stolen. Why wouldn't that alone make them a victim? Oh, but that commentary that they cite to there say someone whose identity has been used, and there's no indication that Mr. Agumba used anyone's identity. What they're talking about there then is the evidence found on his computer, not his communications with ERO and AROHA, and there's some evidence that he obtained some information related to people, but there's no evidence that he used any of that in any way. And your position is the information must have been used in order for the person to be a victim? That's what the guideline provision, that's what the commentary says. Well, that's what the commentary says, right?  Okay. But if you don't consider it, then we're just back to victim, and the offense here is, it says victim of the offense, and the offense here is wire fraud, and I think when people think of fraud, being a victim, consistent with Miller, is that you are deceived and cheated, and there is no evidence that any of those people related to the evidence that's found on his computer were deceived or cheated in any way. There's no evidence he did anything with that information to harm anyone in any way. Thank you. Judge Mendoza? Mm-hmm. All right, thank you. I'll put two minutes back on the clock when you stand up for rebuttal. Good morning, Your Honors. My name is Ann Voights, and I represent Mr. Duro in this appeal. We've raised a number of issues in the brief, but at argument, I'd like to focus on three, although I'm certainly happy to answer any questions that the Court has. In particular, I'd like to focus on the multiple conspiracies instruction, the 1028A issue, and then the minor role adjustment at sentencing. If I might begin with the multiple conspiracies instruction. Counsel, I'm sorry. If you wouldn't mind going to the crux question, and here's my question to you. Here, the fraudsters did use Duro's account to successfully defraud someone through this romance scam, so isn't Duro's account information right at the heart of wire fraud? I don't think so, and to the question that the panel asked earlier about what crux means under Dubin, Dubin said it has to be something that's not an ancillary feature. It has to be more than a causal connection. It has to go to what is fraudulent and deceptive, and I think here there are two issues. One, although the government has defended this on an aiding and abetting theory, the instructions didn't require them to find that someone else had used it, so the jury could also have convicted based on what they thought Mr. Duro himself had done, and that is a fundamental problem here. When it goes to the crux, again, the fact of who the bank account was wasn't what was at the heart of it. The heart was Mr. Featherstone, who engaged with the victim DJ, represented himself as someone engaged in romance, so while the bank account was a vehicle, it was ancillary to it. It was not the core of the fraud. The fraud was Mr. Featherstone representing to DJ that he was in love with her, that he needed this money, and the bank account was simply a vehicle, a way of doing that. Thank you. You're looking at the question in a fairly narrow way, but as for conspiracy charges, the crux of the conspiracy charges is the agreement itself, right? So does it matter whether someone actually used it? As long as the possession or use of the means of identification goes to the heart of the agreement, doesn't that satisfy Durbin? I don't think so, Your Honor. And first, the government, although they alleged it as a possession, use, and transfer case, the core of it was really about use, and that's how they argued it in closing. But as I said, the instructions, while they would have allowed for conviction on aiding and abetting theory, they didn't require it. The instructions said that you had to find that a person, which could include Mr. Duro, had used their identification. The fundamental problem with that is both the crux of the issue— you said the core of it. That's not the way it was charged. Admittedly, I didn't go through carefully the government's closing instructions, but as I read the indictment and the charges, it really is about a big group of people conspiring to commit wire fraud and carry out multiple ways of defrauding people, essentially. And what I heard you say, and I want to make sure I understand your argument, is that the government narrowed their case to just the use of means of identification during the course of the trial and in closing. That's what you're saying? I think they did, but I think even if they had not, it still doesn't go to the crux. The bank account in this particular case, the core of the fraud, even if we reduce it to the who, the who that really mattered here was Mr. Featherstone or the individuals who were having contact with the victims. Mr. Duro, whose involvement was tangential and simply provided a bank account under his name, that fails under 1028A for a whole host of reasons, not least because it is not identity theft to use your own identity, and that collapses as the Supreme Court wanted. But wasn't the victim told that the bank account was Anthony Featherstone's? That's why the victim sent the money to that account? And why isn't that enough to show that Mr. Duro aided and abetted the use of that account? I think because, I will confirm what they said in the record, but my understanding is if you look at what was actually argued, what they said was that it was just the creation of the account. And so what the government said, they did so without legal authority because they used it and possessed it and transferred it in connection with the scheme to defraud. And the aiding and abetting, again, focused simply on this idea that it could be in relation to. So the jury wasn't required to find that. So we have two challenges here. We have both the sufficiency challenge, like Mr. Aguamba, but we also have the jury instruction challenge. And we think that both were adequately raised in this case. If I might also address the multiple conspiracies instruction, because I think that goes in part to Judge Wendt's question. The other problem here, and this was squarely preserved, this was raised by both defense counsel, was that there was, as the government effectively admitted, when they put on testimony that this was a bowtie conspiracy, they didn't have the evidence that this was a single conspiracy. Or even two separate ones, money laundering and wire fraud. In fact, if you look both at the fact that Mr. Aguamba, his only connections were with middlemen who Mr. Duro had nothing to do with. Mr. Duro, by contrast, had contact with only one middleman, again, who Mr. Aguamba had no connection with. These were a whole host of conspiracies that were essentially piled together. And as the government's own agent testified, it was a bowtie. But a bowtie doesn't meet the requirement that you actually have a rim around a conspiracy. It simply doesn't. And here they raised the request for the multiple conspiracy instruction. It was squarely preserved. The court denied it without explaining why. And that violated their right to non-interior defense. Right. Can you talk a little bit more about what you think is evidence of multiple conspiracies? Because the fact that they don't know each other, to me, isn't dispositive at all in determining whether it's one conspiracy or not. Sure, I'd be happy to. So first off, generally with the censored, there has to be something that connects these. And here their argument was that there was no. They said there was a bowtie, so that there was a central core, but nothing connecting the spokes. And that there's no evidence that Mr. Duro, for example, knew of the full scope that his understanding of the conspiracy was that his benefits depended on its success as a whole. I would also point to the fact that when they talked about the activities with his brother, which came significantly later, which had no connection with the events with D.J., the government described that and said it was a pivot, which suggested, again, this is a separate set of activities that aren't connected to each other sufficiently to be a single conspiracy, let alone the conspiracy that was actually charged in the indictment. And that is one of the fundamental purposes of giving a multiple conspiracies instruction, is to make sure that if someone is convicted, they're actually convicted of the crime with which the grand jury returned an indictment. If I might, I see I'm running short on time, if I might address the issue of the minor role adjustment. Sure. Because, again, that was one that was raised by the Mr. Duro's counsel, and the district court rejected it without explanation, didn't even address the fact that it was raised. We think that that is error under clench for the failure to explain. And it was also failure and error in terms of the result, because it is something that should have been given here. If you look at Dominguez-Caicedo, it talks about the three steps that the court should take, none of which it took here. It's supposed to look at all the identity, all the individuals for whom there's sufficient evidence. In this case, there were many, many, many defendants who were indicted. And despite the government's argument that it should only concern, that this court should only concern itself with those who are convicted, in fact, this court has been clear that it is not limited. What it has to look at is was there sufficient evidence of others' involvement and their comparative degree of culpability. So what exactly did the district judge say with respect to this objection? He said nothing. Well, how did he overrule it? He just didn't apply it? He just didn't apply it. He adopted the PSRs. Was it discussed at sentencing? It was discussed when they compared. For example, Mr. Dewar's counsel raised the sentence that one of the middlemen got, raised the sentences that others had gotten, and talked about Mr. Dewar's comparatively minimal role. And it was also raised because it was addressed in the addendum to the PSR, so it was also raised in an objection to the PSR. I think that was more than sufficient to raise the issue, and the court simply didn't address it. Court didn't even address the 3553A factors until the government asked it to, and even then did so in passing. We think that that's not enough under clench. But even if it had, there's no way to justify it on this record where Mr. Dewar's involvement was so tangential, so limited in time compared to the scope of the conspiracy, so limited in terms of the number of victims involved. The only one here who was specifically addressed was DJ. And so we think under that, it was error, and this court should vacate his sentence. I see. I'd like to reserve, I think, the one minute I have left of my time, if I might. I'll give you two minutes back. Thank you. Good morning, Your Honors. Sue Bai for the United States. The defendant's challenges to their 1028A convictions must fail because the jury instruction provided at trial was not error, much less plain error. Well, hold on. Dubin was decided after, and the model jury instruction was then amended to include the crux language. Why not send it back to the district court, have the jury make a decision as to whether or not that possession or the use of it was at the crux of the criminal conduct? Simply put, the evidence was sufficient to sustain the conviction and satisfy the crux standard, and there is no reasonable probability that the verdict would have been different given that the crux standard was supported by ample evidence at trial, evidence that was undisputed. Hold on. So the jury was given an instruction saying that it could be related to, not just at the crux of, but related to the criminal conduct. Related to is kind of broader, you would agree with me. Wouldn't you agree that that's a little broader than at the crux or at the center? Though that may be true, Your Honor, the Ninth Circuit case in Conte is clear that the analysis here hinges on whether or not there would have been a reasonable probability that there would have been a difference, even assuming the crux standard is an element. So why isn't there a reasonable probability that that would happen by a jury, by any one juror? Yes, Your Honor. First and foremost, there was ample evidence supporting the fact that the means of identification that formed the basis for the 1028A convictions were central to accomplishing the object of the wire fraud conspiracy. Walk me through that with Dura. Yes, Your Honor. So with respect to Duru, he was charged with aiding and abetting another individual's 1028A violation. So in that case, there was a principal, which included co-defendant Igbokwe, who testified at trial, and the aider and abetter was defendant Duru. Co-defendant Igbokwe testified at trial, and the evidence presented at trial, including his testimony and corroborating documentary and other testimony, supported the fact that every element was met with respect to defendant Igbokwe and his use, transfer, and possession of defendant Duru's PD Enterprise Wells Fargo account, which formed the basis for the 1028A conviction as to Duru. In that case, that included the crux standard. There was no dispute at trial that the fact that the U.S.-based accounts were central to accomplishing the object of the conspiracy. So, for example, the lies that were told to the victims online was that this money was going towards somebody who was either based in the United States or a business that was based in the United States. So given that particular situation and the modus operandi of the conspiracy, the fact that these U.S.-based accounts, including the U.S.-based account that is the basis of Duru's 1028A conviction, was central to achieving the object, ultimately tricking the victims into sending the money, believing the lies that they were told, was absolutely central. And this was indeed the Ninth Circus holding in Parvis. That the fact that a medical practitioner... Does it matter, though, that Duru's account wasn't actually used? As I understand it, well, it was used, I guess, initially. The victim sends the money to his account thinking it's Anthony Featherstone's account, and then the bank wires it back or sends it back. How does that affect the analysis? Not at all, Your Honor, for the following reason. The conviction was based on a use, possession, or transfer. Igbokwe committed all three, and Defendant Duru aided and abetted with the criminal intent as to all three. And he did so in the following ways based on the evidence at trial. First, Codefendant Igbokwe explained and testified at trial that he explained the fraud scheme and the money laundering scheme to Defendant Duru. Duru then, in response, registered a fake business in the name of PD Enterprise. Then he used that documentation to open a bank account, both a Bank of America account and the Wells Fargo bank account, that is the basis of this conviction, for the purpose of giving it to everybody who needed it. And that everybody was referring to the myriad of other fraudsters involved in this conspiracy. And so he not only opened that account, but then sent that account information, including the account number and the name, to Defendant Igbokwe. And then the two coordinated about sending that account information to the various other fraudsters so that it could be made available to receive any fraud money that could be coming in. So throughout all of this process, and that doesn't even include the specific actions he took with respect to one of the victims who testified at trial, Denise J. I'm just concerned that this information was not given to the jury, and that the jury could make the decision of whether or not you're right, right? I mean, I think you make a compelling argument, but that's the kind of argument that you'd want to make to the jury with the jury instruction, the correct jury instruction. That's sort of what I'm having a problem with. Your Honor, respectfully... But we're on plain air review on that question, right? Yes, yes, absolutely, Your Honor. And so to answer your question directly, we believe we did make that argument. So in the closing argument, government counsel stated that these bank accounts were important because they helped to trick the victims into sending money, believing that the lies that they were told matched up with the information provided in the bank account. Furthermore, the jury instruction was accurate as to the aiding and abetting. Contrary to defense counsel's proposition, there was no concern, really, based on the instruction that defendant Duru would have been convicted of being the principal in this scheme. The instruction was very clear that this was under aiding and abetting theory. And as to Your Honor's point also, yes, we are under plain air review. And critically, the defendants have the burden of proving prejudice, that their substantial rights were affected. Based on the ample evidence provided at trial, the accurate jury instruction provided as to both defendants and the fact that government counsel made this point in the closing argument, there is simply no reasonable probability that the outcome would have been different had the specific description of the element during and in relation to the wire fraud conspiracy, specifically the Kruk standard, had been provided. I'm tracking you with respect to Duru, but Agwumba is, I think, a little differently situated, given that he possessed that Chase account, the 5027 Chase account, after the specific fraud that we're looking at. His situation seems closer to the defendant of Sepian. What's your response to that? Your Honor, respectfully, we do not think that the record supports that proposition. And I would like to correct the prior statements that might have been made, or the suggestion that Agwumba possessed this account in a fleeting manner. To be clear, he possessed this account while he was facilitating a $2 million fraud that was actively ongoing. So the possession was based on a text message exchange that was dated June of 2017. The cell phone from which these text messages were retrieved was seized by the government on or about August 2019. And this was testified to at trial by Special Agent Kimberly Anderson, who said that that's when the phones were seized at the time of the takedown and arrest of the various defendants in this case. So that means evidence at trial showed that defendant Agwumba possessed, first of all, this account for at least a period of two years. Furthermore, critically to your point about the contemporaneousness about when he possessed the account with the ongoing fraud, the order of operation went as follows. Defendant Agwumba became aware that there was a fraud scheme that may have led to a $2 million fraud money dropping into a bank account. When he became aware of that, he specifically contacted co-defendant Valentine Iroh and said that he needed a Chase bank account that could receive $2 million. In response, co-defendant Iroh then sent the bank account number, as well as other bank information, to defendant Agwumba and said, go ahead. After that exchange, in the same text chain, the two conferred about the appropriate percentage cut that they would each take to compensate them for their roles in this conspiracy. And after they had an extended exchange about the appropriate percentage cuts that they would agree to, they agreed to use the account and then keep in touch. And it is in this exchange, during this exchange, while the fraud was active and ongoing, that defendant Agwumba received that bank account from defendant Iroh. This is the 5027 account? Yes. Yes, it is, Your Honor, in the name of Minerat Tumentre. And this is when he received that account for the purpose of passing it on to the fraudster, who would then give it to the victim so that the money could be deposited in that account. That didn't happen? There is no evidence in the record that it did, that the fraud was successfully completed. However, we don't believe that that is necessary to sustain the conviction for the 1028A violation. And that is because the crime simply does not require completion or success. The crime is the possession, possession of the account information, which there clearly was contemporaneously with the ongoing fraud and in a way that was central to persuading the victim to send the money to complete that fraud. Was the 527 or 5027 account information given to the victim? There's no evidence in the record to show that it necessarily would have been given to the victim. But once again... And would that be necessary for it to be the crux? Not necessarily, Your Honor. Because again, the crime here was the possession in connection with the wire fraud conspiracy. To be convicted of wire fraud conspiracy, the fraud scheme may not be successful. And so completion or any further substantial step was not necessary, given all the evidence presented at trial. Namely, that defendant, Nick Boakway, in order to further this wire fraud conspiracy, sought out and acquired that specific U.S. bank account information for the purpose of effectuating a successful wire fraud scheme. Under those circumstances, it does go to the heart. It is central to accomplishing the object. And that is exactly what this court decided in Parvis, where the fact that the letter was signed by a medical professional was an important part of achieving the ultimate outcome. But the evidence in that case, as I understand it, was that the defendant would not have received the child's passport absent the letter. Here, I mean, I hear what you're saying about it. The fraud doesn't necessarily need to be complete, but we're stuck with the at-the-crux language that the Supreme Court has given us. And, you know, what does that mean in a scheme where the fraud wasn't complete? Well, Dubin's language is actually helpful. The standard is whether or not it was used in a deceitful or fraudulent manner, or possessed in a deceitful and fraudulent manner, in this case with a Goomba. And it was possessed in a deceitful and fraudulent manner because it was possessed with the intent to deceive, with the intent to defraud, with the intent to perpetrate the fraud scheme and to help it become successful. And in Dubin, that is all that is required when the underlying predicate crime is one of fraud, as it was here for a wire fraud conspiracy. Turning next... Is the question whether it's helpful to carry out an object of the conspiracy, or is the question that it's helpful to carry out the agreement to commit an object of the conspiracy? So it's a conspiracy charge, right? Yes, Your Honor. And what's criminal about it is an agreement to basically accomplish one of the objects that's laid out. And then, you know, I don't think anybody's disputing that overt acts were committed along the way. Precisely, Your Honor. The predicate crime here for the 1028A conviction was not substantive wire fraud. It was indeed wire fraud conspiracy. And therefore, the fact that it went towards helping the accomplish of the agreement to commit the wire fraud, the conspiracy, is sufficient. And given that the predicate was conspiracy, this account was absolutely central to helping to accomplish the object of that conspiracy, regardless of whether or not it was successful. Can you address Ms. Voigt's point about multiple conspiracies? Because in a big one like this, sometimes it gets very confusing. Sometimes there are little conspiracies within the conspiracy. So as I understand her argument, the government's argument is that this was a bow tie. So the fact that there may be a central hub doesn't necessarily make this one conspiracy rather than multiple conspiracies. How do you respond to that? The evidence at trial proved that the spokes were connected. And here is why. That one of the jury instructions provided. So the defendant's theory of the case, if it were such that the spokes are not connected, the jury instruction regarding the Lapierre scope and benefit test covered that theory. And they covered the theory by saying that if you have communications, if the defendant has communications with one individual, doesn't know about the rest, however, has reason to believe that that person that they are communicating with is also talking to other conspirators, and the defendant has reason to know that the benefit that individual would receive depended in part based on the success of the entire venture. That is sufficient to be convicted of that conspiracy. And the evidence at trial was ample. With respect to defendant Agumba, he talks about in his messages how he's talking to the fraudsters. And though he doesn't communicate directly with any money mover, he surely knows that they exist, given the fact that he is looking for these accounts. And from the middleman, including Valentine Iroh. But does the government have to prove that Duro specifically was the money mover for the schemes that Agumba was involved in? Not just a generic scheme within the conspiracy that may have been, may have had other participants. No, Your Honor. The case law is clear in the Ninth Circuit that each individual does not need to be aware of all of the other conspirators in the conspiracy or every part of the conspiracy. In fact, in order to be entitled to a multiple conspiracies instruction, there must be some evidence presented at trial that the defendants were involved in a separate, unrelated, independent agreement compared to the overall charge conspiracies. That was simply not the case here. All of the evidence related to the overall wire fraud and the money laundering conspiracies. This argument that they may have played a smaller role because they were involved in a sub-agreement but didn't know about every single part of the conspiracy or every other conspirators simply isn't sufficient to undercut the conspiracy conviction. Because such knowledge is not required. And here, specifically, the scope and benefits test encompasses why that is the case. And the evidence showed that each defendant, defendant Duro and defendant Agumba, knew or had reason to know that there were other conspirators involved, including the ones that they did not speak to. I want to ask you a question about the sentencing issues and the 10 victim enhancement. With regards to those, can you indicate where you find 10 victims in the record for Agumba and for Duro? Because I couldn't. Yes, Your Honor. Specifically, we'd be happy to provide the excerpts of record citations, but if I may describe them generally. With respect to Agumba, he, in his laptops that was seized in 2019, at the time he was arrested, those laptops contained victim report information. Victim reports that were downloaded as a result of having infected victim computers with malware. Specifically, the malware that was found on his computers at the same time, including the low key bot malware and the NanoCore remote access Trojan malware. Expert testimony at trial by Special Agent Greg Walker went to this fact that these reports. But I need you to focus me on what the actual loss was. That's what I need you to focus me on. Yes. On the victim reports at the bottom of the page, and the government's briefs provide some citation to this. At each victim report, there were 15 victim reports included. And each of them included a host of different information, including the name that was on the user account of the computer that was infected with the malware. And in many cases, the specific account information, like account usernames and passwords that were stolen from that victim computer. And at the bottom of that report, it says total number of information. And there were at least 10 reports where that number was one or more, where the specific identifying information was stolen. It lists in that report, specifically some email addresses, as well as passwords of various different accounts. Right. Still, let me ask you the question again. Yes. Where's the actual loss? Tell me what you see as the actual loss, so that I understand your argument.  The actual loss is the information, the private information, from those computers that were infected with the malware. The possession of private information is the actual loss that you, that the government claims is actual loss. Yes, Your Honor. Yes, Your Honor. And in this case, we believe that the plain language of the... Do you have a case to support that position? We rely on the plain language of the meaning of victim, Your Honor, as this enhancement is applied. Well, do we go to the notes for that? No, Your Honor, because there is no genuine ambiguity as to the word victim. Surely, in cases, the fact that your personal information was stolen would constitute, would qualify you as a victim. I think that the commentary guidelines actually highlights why it shouldn't be applied. Because the ordinary common meaning of victim includes people who may not have suffered monetary loss. That is especially also the case when we're talking about a conspiracy here, once again. And so... So, just so that I understand... Yes, Your Honor. Your view is the possession of the information that is private should be considered actual loss. That is true, Your Honor. It should be considered actual loss. And also, of course, there was additional information that would constitute intended loss as well when he infected those computers. But yes, Your Honor, that is correct. That is the government's position. Do you have to show actual loss or either actual loss for people whose means of identification were used without lawful authority? Either, Your Honor. Under either theory, the government would prevail. Is the government limiting itself to just actual loss or is the government also relying on that second part? The government is also relying on both. Yes, Your Honor. Not just actual loss, but... Can you explain to me how that's the case? Yes, Your Honor. So, the specific information stolen also goes to the means of identification. So, also, when you look at the victim report, I don't want to list specifically the victim information here in this particular setting, but it does include specific email addresses, specific passwords. And Special Agent Greg Walker testified at trial that these were the types of information that you were able to use to log in to these victim accounts. So, for example... Is there any evidence that that happened? That the actual logins happened? No, Your Honor. But we don't believe that's necessary in order for you to become a victim when your information was stolen, clearly with the purpose of ultimately accessing, without your authorization, these private, sensitive bank email accounts. So, the evidence seems a little bit more compelling on the question of number of victims for Igbubu versus Duru. Can you go through Duru and the 10 victims or more? What evidence do you have that it's more than 10 victims? Yes, Your Honor. The government does note in its answering brief that five of those victims did suffer actual loss, and this is supported by the financial records, and including the MoneyGram and Western Union transactions, where his identification is associated with the amount of money he picked up. Counsel, I can count nine. Give me the 10. Yes. We do note that the remainder of the victims were targeted. They did not suffer actual loss in those cases. That being said, the government's position, once again, is that the meaning of victim is clear, and here, they were victims of the conspiracy, not the substantive fraud, necessarily. On that, do you have to rely on aiding and abetting theory? No, Your Honor, we need not, because actually, in these particular cases, these victims were all identified in connection with defendant Duru's specific communications in connection with the conspiracy, not necessarily the 1028A aiding and abetting charge. On that theory, every member of the conspiracy, regardless of how significant the role, is then responsible for all the victims identified within that conspiracy under the government's theory? Not necessarily, Your Honor. The government actually could have attributed many more victims to defendant Duru, but it chose to limit itself to the victims about whom the defendant Duru specifically discussed in these messages and tried to collect money from, and sometimes, we had financial records that supported that those actual losses occurred, and sometimes, there weren't those records. However, in those six cases where those financial records did not materialize, the victims were still targeted as part of this wire fraud and money laundering conspiracy because he specifically discussed with co-conspirators helping to receive that fraud money and then to move it around for the purpose of hiding where the money came from. As a result, if we're counting victims of the charged conspiracies and the conspiracies for which defendant Duru was convicted of. Guidelines specifically note for, and this is at the core of my, at the crux of my problem. When I look at the sentence enhancement, note for E says, and I'll move on to subsection, double I says, in order to find the 10 or more victims, you look at any individual whose means of identification was used unlawfully or without authority. So how is that the case? How is that the case? Yes, Your Honor. I simply put, we need not turn to that commentary note or any commentary note, and here is why. Not only is the word victim not genuinely ambiguous, but other portions of the sentencing guidelines help to illuminate that these intended victims should be encompassed. So for example, in section 1B1.3A3, discussing the scope of relevant conduct, it includes not only the harm resulting from the offense, but harm that is the object, the object of the offense, of the actions or inactions. And here, so the guidelines, and this is the guidelines, not a commentary note. So the guidelines clearly contemplate in situations like contemplate calculating harm or victims, the object of the crime. And here, the object of the crime was potentially targeting these, was targeting these individuals for the purpose of stealing their property or stealing their money or identification. Because the guidelines is clear between the plain meaning of victim combined with the plain meaning of object of the offense as outlined in 1B1.3A3, we believe that the commentary notes need not be referred to. That being said, even if the court were to find that in some cases the guidelines language were genuinely ambiguous with respect to at least the loss amount, the commentary note would support the government's position as well, since it defines loss as the greater between actual loss and intended loss. All right, thank you. Our questioning took you over time, but let me make sure that my colleagues' questions have all been answered. Thank you very much. Let's put three minutes on the clock for each appellant. Thank you. Judge Mendoza, the government in its answering brief relied on exactly that note that you just read, 4E, and I responded to that. And that was on page 90 and 91 of their brief, and I responded to the reply brief, and I said it was wrong for exactly the reason you just said. I think they've not only waived their counter-argument now, but they've led me down the wrong path. So I'm responding to the wrong argument that, by the way, was raised in about a half a line, like several of the arguments in this respect. A lot of times the court won't even consider arguments that are raised so briefly. I responded to it. Now they're jogging to a different path. I don't think that that's a viable way to approach this process. Regarding the 1028A offense, the government pretends that there is some sort of clear picture into some $2 million fraud that Mr. Agwemba was involved in. That is just not true. What the evidence of that is a series of text changes between Mr. Agwemba and Mr. Iroh. It starts off with Mr. Agwemba saying, Nuwana find chase wire 2M. That the agent construes is that someone's looking for a $2 million account chase to receive some funds. The Iroh responds with the chase account. The next day, Agwemba writes back and they say, these people want online access to their account. Well, that's just nonsense, right? They're not going to give them online access to their bread and butter accounts for doing this sort of thing. The next day, Agwemba writes and says, I never heard from the London guys, presumably the Nuwana who wants the 2M. But some other guys want an account and they want online access. Iroh responds, leave them, sir. They're not serious. That's the evidence with respect to some $2 million fraud that Mr. Agwemba, according to the government, is in the thick of. It's nonsense. It may well be, it seems quite likely, that they're trying to rip off Agwemba by getting access to some account. Not that there's actually any fraud going on in the background. But we really don't know. We just don't know. Now, the government related to that conduct. They asked for possession instruction. That is at CR 1187 at 67. The judge gave a possession instruction, 6ER 1180 to 81. At trial, even under the old relation type standard, the government couldn't even make an argument as to how Mr. Agwemba's possession of that account number for some unknown amount of time related to the wire fraud conspiracy. And instead, this is at the root of the prosecutorial misconduct claim, they argued that someone else's use of that account in some totally unrelated context with which Mr. Agwemba was not involved at all, made Mr. Agwemba guilty of the possession offense. And that is at 6ER 1104, 1105. They just can't. And this is a possession. This is not a possession conspiracy. It's a possession offense. How was his possession of that account for some brief unknown period of time related to something in the background that may have been a fraud, it may have not, who knows? How is that at the crux of the massive wire fraud conspiracy charged account two? There is no plausible argument for that, zero. And that is a sufficiency claim and that is reviewed for plain error. I'm sorry, that is reviewed for de novo. But as far as the jury instruction claim, even if you review it plain error, the government's argument with respect to this issue at trial was that Mr. Agwemba was guilty of possession based on someone else's totally unrelated use of the account. That's just flat out wrong. That was flat out wrong under the law at the time. It's flat out wrong now. It was grossly misleading to the jury to suggest that it didn't prejudice Mr. Agwemba belies common sense. Of course it did. All right. Thank you very much, counsel. Thank you, Your Honor. I might address three points in the battle. First, with respect to the 1028A claim. I'd like to start by saying I think there are two issues that are being sort of conflated. One, whether Mr. Giroux's use of his own identity could be the basis for the 1028A conviction. And second, the idea of whether this goes to the crux. And the Supreme Court specifically rejected the idea that in relation to could be this sort of capacious language that it was argued and charged as below. And I'd like to read if I could quickly what the government said in closing. It said, it's enough that the bank account was used in connection with a criminal purpose. And here the criminal purpose was the wire fraud conspiracy. That's at ER-1105. It said, and they did so without legal authority because they used it and possessed and transferred it in connection with the scheme to defraud as well as overall wire fraud. That's at ER-1107. That is not the sort of crux requirement that the Supreme Court required and do. And it's not what the current model instruction reflects. And in fact, what the court told the jury, and this is at ER-1178, was that it required simply, I'm sorry, that is ER-1180, that it simply required that the person did so during and in relation to the offense of conspiracy. That is simply not the sort of crux requirement that the Supreme Court articulated that was required. And to Judge Mendoza's point, that is something that should have gone to the jury. It didn't, and therefore this court should reverse. The fact that this was prosecuted under an aiding and abetting theory doesn't preclude that because the court told them that they could be, that Mr. Drew could be convicted even if he did not personally commit the act, not only if he did not personally commit the act. With respect to the multiple conspiracies instruction, if I could address a point. The test here, because we've preserved the issue, under Tarren-Palma, if it is possible, so just is it possible for a jury to find that there were two different conspiracies that existed, then the district court has to give the instruction. It's not, is it more likely than not. It's not the same as a sufficiency challenge. The question is, is it possible? And the answer here is yes. And if this court looks at the factors set forth in Bibero, the nature of the scheme, the identity of the participants, the quality and frequency and duration of the contacts, and the commonality of the time and the goals, remember this of course was a scheme that apparently included business enterprise compromise, malware, romance fraud. There was very little core to that. And to Judge Nguyen's question initially, it does require that there be some connection between the spheres. If the spokes function independently, and the only core is the middleman as it was here, and as the government's own agent's testimony confirmed, then the multiple conspiracy instruction should have been given. And that should have been an issue for the jury to decide. Finally, with respect to the 10 victims, we just note that we think that that was simply not met here. We think the math doesn't add up to 10 victims. We also think the math doesn't add up on the intended loss. And we think that Mr. Duro should have gotten a minor victim adjustment, and that the court should address those issues. The court has no further questions. I see I have five seconds, and I will sit down. Any questions? Thank you. All right. Thank you very much, all counsel, for your very helpful arguments in this case. The matter is submitted, and will be in recess until tomorrow morning. All rise. This court, for this session, stands adjourned.
judges: NGUYEN, MENDOZA, UNKNOWN